# Neely's Estate.

*Decedents' estates—Wills—Interpretation—Chargeable bequests—Care for cemetery lot—Cy pres doctrine.*

A bequest of the residuary estate of a decedent in trust, the income to be expended in the care of her lot in the cemetery will not

be set aside because the income is larger than is necessary for the actual maintenance of the lot.

While a bequest of this character is subject to diminution by the Orphans' Court, nevertheless where the circumstances are such that the intention of the testatrix was to also provide for the care of the whole cemetery, it will be sustained.

The Orphans' Court has equitable power to apply the doctrine of cy pres, and the sustaining of the bequest for the maintenance of, not only the testatrix's lot but of the whole cemetery, is most nearly approximate to the spirit and intention of the testatrix.

Argued April 29, 1926. Appeal No. 142, April T., 1926, by exceptants, from decree of O. C. Allegheny County, May T., 1924, No. 33, dismissing exceptions to adjudication in the case of Estate of Nancy J. Neely, deceased. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Exceptions to adjudication. Before TRIMBLE, J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the exceptions. Exceptants appealed.

*Error assigned,* among others, was the decree of the Court.

*Ellsworth Jordán,* and with him *S. S. Robertson,* for appellant.

*Ferd H. Phillips,* for appellee.

OPINION BY HENDERSON, J., July 8, 1926:

This appeal involves the disposition of the residuary estate of Nancy J. Neely who died unmarried and without issue. The estate of the decedent was disposed of by will. After making provision for the payment of her debts and certain legacies, she made disposition of the remainder of her estate as follows: "and after all

my just debts and expenses have been paid and if any money is left it is to go to the Sharon Presbyterian Church the interest to be expended annually for the keeping of my lot in the cemetery and to be under the supervision of my executor.'' The testatrix had been for a long time a member of the church named in the bequest. There was connected with it a parcel of land which had been used for nearly one hundred years for a burial place, and more than twelve hundred persons had been buried there before the death of the testatrix. No provision existed for the maintenance of the cemetery and the care of the burial lots except that which was derived from the sale of portions of the ground from year to year; the amount of which for a number of years averaged less than $250, a sum wholly inadequate for the care of the premises, and as it was derived from the diminishing area retained by the church, it was an income which must necessarily cease when the lots are all disposed of. The testatrix and other members of the family owned a lot near the center of the space used for cemetery purposes which included land on both sides of the church building and at the rear of it. Much of the cemetery was neglected; no markers were to be found at more than half of the graves, and more than five hundred of them had been abandoned so far as care was concerned. The Neely lot is sixteen feet square, and on it was erected a family monument. There are also markers at seven graves on the lot. A brother of the testatrix had died some years before who provided in his will that the income of $1,000 should be paid to his sister, the decedent, during her lifetime, and after her death should be paid to the trustees of the Sharon Presbyterian Church, the interest on which should be used "for the keeping in good order of our lot in said cemetery, and the balance over and above needed for said lot shall be used for the rest of the cemetery.'' The income

from this fund became available on the death of Nancy J. Neely. The evidence shows that the cemetery has been in an unkempt condition except as to a small number of lots with respect to which there were special provisions for maintenance. Objection is made by a nephew, some nieces, and other more remote relatives, to the payment of the bequest to the church on the ground (a) that there is no necessity for an expenditure on the family lot of the testatrix, provision for the care of it having been made by her brother; (b) that the amount provided for is excessive, regard being had to any reasonable requirement of care; (c) that all of the bequest, or as much thereof as is not really necessary for the keeping of the lot, is void because of the rule against perpetuity and therefore distributable to the next of kin. In support of this position, they contend that the clause creating the bequest must be construed strictly with the effect that the words therein "for the keeping of my lot in cemetery" must be held to limit the expenditure of the income of the fund to the family lot. From one point of view, there is weight in the argument of the appellants if the words "keeping of my lot" are to be understood in the narrow sense which the appellants seek to give it. There are precedents in apparent support of the proposition that the bequest of a testator of a fund for such purpose is subject to be diminished by the Orphans' Court if it appear to be unreasonable or in excess of the amount which could be properly used for the purpose intended. We agree however with the clear and convincing opinion of the auditing judge that the language of the testatrix's will should have a wider application. The keeping of her lot implied the keeping of the cemetery, and it might be assumed that such keeping included not only the maintenance of the testatrix's burial place in the particular lot, but also in some other place to which a removal of the cemetery might become

necessary because of changed conditions. It may reasonably be assumed also that she had in mind the keeping of her lot with respect to its surroundings, the approaches to it, and the condition of the other lots in the burial place. Interested as she evidently was in maintaining a respectable memorial of herself and her family, and in sustaining the church of which she was so long a member, it is not at all likely that she had regard only to the condition of her own lot which could have little attractiveness with any appropriate care when surrounded by neglected acres given over to weeds and brush and briars. Certainly she assumed that her provision would secure not only the maintenance of the family monuments and the surface of the lot in good condition, but that a proper approach thereto would be maintained and that the general condition of the God's Acre which was to be her resting place should be respectable in appearance. The fact is not to be overlooked moreover that in making the bequest she was dealing with her own property. She disappointed no legitimate expectations with respect to inheritance, and it was within her power to provide care for her burial place with greater liberality than might accord with the economical views of a stranger who considered the subject from the point of view of necessary respectability. When the vicissitudes of future years are taken into consideration and the circumstances and knowledge of the testatrix are duly regarded, we are of the opinion that the learned judges of the Orphans' Court have not put an unsupported construction on the clause of the will under consideration.

If however the appellants are correct in their interpretation of the language used, the appeal still ought not to prevail for the bequest is for a charitable use as shown by the Act of May 26, 1891, P. L. 119, and the Act of May 9, 1889, P. L. 173, saves such bequests where the objects cease or they are given in perpetuity, in which

case, courts of equity are required to carry into effect the intent of the donor or testator so far as the same can be ascertained and carried into effect consistently with law or equity. This statute confirms to courts exercising equitable powers jurisdiction to apply the doctrine cy pres and it is evident that the sustaining of the bequest for the keeping not only of the testatrix's lot, but the maintenance and care of the whole cemetery, is most nearly approximate to the spirit and intent of the testatrix. Application of the principle will be found in Toner's Est., 260 Pa. 49, and Thompson's Est., 282 Pa. 30, where many cases are cited and discussed. Our conclusion is that the decree of the Orphans' Court may be sustained for either of the reasons stated; (1) the income of the fund may be applied not only for the keeping of the testatrix's lot, but to the improvement of the surrounding cemetery grounds; (2) that if the words of the bequest do not support such a construction, the bequest is not defeated, but may be applied to the maintenance of the lot and the adjacent cemetery premises by the application of the equitable cy pres doctrine.

The assignments are overruled and the decree affirmed at the cost of the appellants.

Under judgments were entered in Appeals, Nos. 143, 144, 145, 146, 147, April Term, 1926, which raised the same question.