## Neely's Estate.

*Wills—Legacy—Bequest to church—Care of cemetery lot and burial ground generally.*

A bequest of $5,000 to a church, by a woman without direct descendants, "the interest to be expended annually for the keeping of my lot in cemetery," will be sustained as a whole, and be given to the church for care of the burial ground generally, where testatrix knew that her brother had previously left $1,000 for the upkeep of the lot, and that this latter amount was sufficient for that purpose, if it appears that the cemetery was over a hundred years old, that it was crowded with graves in a dilapidated condition, and that the church had no sufficient funds to put it or keep it in proper condition.

Argued November 29, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

Appeals, Nos. 20-25, March T., 1927, by Eleanor Onstott McClaren et al., from judgment of Superior Court, April T., 1926, Nos. 142-7, affirming decree of O. C. Allegheny Co., May T., 1924, No. 33, in estate of Nancy J. Neely, deceased. Affirmed.

Appeal from decree of Superior Court affirming Orphans' Court. See 88 Pa. Superior Ct. 372.

The opinion of the Supreme Court states the facts.

Decree affirmed by Superior Court. Eleanor Onstott McClaren et al., collateral kin of testatrix, appealed.

*Error assigned* was, inter alia, judgment of Superior Court, quoting it.

*Ellsworth Jordan,* with him *S. S. Robertson,* for appellants.

*Ferd H. Phillips,* for appellee.

OPINION BY MR. JUSTICE FRAZER, January 3, 1927:

These six appeals raise the same question and will be disposed of in one opinion.

Testatrix died in 1923 leaving a will in which she provided "if any money is left it is to go to Sharon Presbyterian Church, the interest to be expended annually for the keeping of my lot in cemetery and to be under the supervision of my executor." Her residuary estate amounted to approximately $5,000. The testimony taken at the audit established that the interest on the sum of $1,000 would be ample for the purpose of taking care of the family lot, and further that provision had, with the knowledge of testatrix, been already made for that purpose by her brother, who died in 1909, leaving a will in which he gave to his sister, the present testatrix, a life estate in his property, and provided that after her death $1,000 should go to the trustees of the Sharon Presbyterian Church for the cemetery, the interest of which is "for the keeping in good order of our lot in said cemetery and the balance over and above the amount needed for said lot shall be used for the rest of the cemetery." The auditing judge awarded the entire fund to the church on the theory that such part of the income as was not needed for the care of the individual lot of testatrix, could properly be applied toward the expense necessary in the general care of the cemetery, in which the lot is located. Exceptions to the decree were dismissed, this action of the lower court was sustained on appeal to the Superior Court and from the judgments of that court these several appeals were allowed.

The church in question, which is located in a rural district, was organized in 1817, and under its charter the trustees were vested with power to use a portion of the church property for burial purposes. The land set apart for such use immediately adjoins the church structure and contains about four acres and at present over 1,200 graves. At least 500 of these places of burial have been neglected and abandoned, the tombstones and

markers on many others are in a fallen and decayed condition, and a considerable portion of the graveyard overgrown with weeds and briars. The church at no time possessed sufficient funds to keep the cemetery in proper condition, the only money available for the purpose being usually small amounts such as were derived from time to time from the sale of lots and income from funds bequeathed to the church at various times for such purposes. Altogether this income is insufficient to properly care for the ground and keep it in good order and free from falling into an unsightly and repulsive condition.

The question is whether, in view of the surroundings, and the knowledge testatrix must be presumed to have had of existing conditions, her gift of $5,000, which is absolute in form to the church but with the suggestion that the income should be devoted to the purpose stated, is to be interpreted in a narrow sense, and applied only for the purpose of keeping the family lot in repair, in which case the gift is unnecessary, or whether it is to be construed in a broader sense, as permitting the use of a portion of the income for the care of the burial ground generally.

If we place upon the will the construction contended for by appellants, intestacy results. Appellants are not direct but collateral heirs, testatrix having left no direct descendants. The record discloses evidence tending to show that although the income from the $1,000 provided by the brother of testatrix is sufficient to keep the grass cut on the family lot and provide flowers in season to render it attractive, such income is insufficient to meet extraordinary expenses which from time to time will be required, such as replacing or resetting monuments, or markers, replacing fences or providing and keeping in repair a proper approach to the lot. In disposing of the question we feel we cannot do better than quote the following from the language of Judge HENDERSON in the opinion of the Superior Court (88 Pa. Superior Ct.

372) : "The keeping of her lot implied the keeping of the cemetery, and it might be assumed that such keeping included not only the maintenance of the testatrix's burial place in the particular lot, but also in some other place to which a removal of the cemetery might become necessary because of changed conditions. It may be reasonably assumed also that she had in mind the keeping of her lot with respect to its surroundings, the approaches to it, and the condition of the other lots in the burial place. Interested as she evidently was in maintaining a respectable memorial of herself and her family, and in sustaining the church of which she was so long a member, it is not at all likely that she had regard only to the condition of her own lot which could have little attractiveness with any appropriate care when surrounded by neglected acres given over to weeds and brush and briars. Certainly she assumed that her provision would secure not only the maintenance of the family monuments and the surface of the lot in good condition, but that a proper approach thereto would be maintained and the general condition of the God's acre which was to be her resting place should be respectable in appearance. The fact is not to be overlooked moreover that in making the bequest she was dealing with her own property. She disappointed no legitimate expectations with respect to inheritance, and it was within her power to provide care for her burial place with greater liberality than might accord with the economical views of a stranger, who considered the subject from the point of view of necessary respectability."

The decree is affirmed in each appeal at costs of estate.