Estate of Anna M. Deaner, Deceased.

Argued November 22, 1929.

Before PORTER, P. J., TREXLER, KELLER,

LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Harris C. Arnold,* and with him *John A. Coyle,* for appellant.—The Act of 1891 does not bring the bequests within Section 6 of the Wills Act: Palethorp's Est., 249 Pa. 389; Blake v. Wilson, 268 Pa. 469; Philadelphia Co. v. Guaranty Realty Co., 78 Pa. Superior Ct. 258; McFadden v. Lineweaver, 297 Pa. 278; Davidson v. Bright, 267 Pa. 580.

*H. Clay Burkholder,* and with him *J. Farrell Garvey,* for appellee.—Since the Act of May 26, 1891, P. L. 119, the legislature has treated gifts for the maintenance and care of burial lots as charitable gifts: Neely's Estate, 88 Pa. Superior Ct. 372; Brogan's Estate, 290 Pa. 319; Specktor v. Hanover Fire Insurance Co., 295 Pa. 390; Commonwealth v. Budd Wheel Co., 290 Pa. 380.

OPINION BY LINN, J., February 28, 1930:

Testatrix died June 30, 1925, leaving a will dated 4 days before her death. She left $4,000 to the Conestoga National Bank of Lancaster, "the interest on which is to be used for the maintenance and upkeep of our family lot in which my parents are buried at Woodward Hill Cemetery," and $2,000, "the interest on which is to be used for the maintenance and upkeep of the grave of my grandfather ...... in St. Joseph's

Cemetery." The balance for distribution for all purposes is but $1,331.37.

The question is whether the trusts are valid. The learned court below held that by the Act of May 26, 1891,[1] P. L. 119, they are charitable bequests and void under section 6 of the Wills Act of 1917, P. L. 403, which prohibits testamentary disposition of property "in trust for religious or charitable uses except the same be done by will attested by two credible, and, at the time, disinterested witnesses, at least thirty days before the decease of the testator ......"

These appeals depend on the correct construction of the Act of 1891, supra. It is entitled "An Act legalizing dispositions in perpetuity for the care of burial places." That title gives notice of intention to legalize something theretofore considered illegal, and applies to such trusts only, as, prior thereto, were prohibited as perpetuities: "The natural meaning of a perpetuity is 'an inalienable indestructible interest.' In this sense charitable trusts are perpetuities. · And this is no arbitrary doctrine, but arises from the nature of such trusts." Gray, Rule Against Perpetuities, 3 Ed. p. 427. The title to the act is "a very important aid to its right construction...... .....is part of it; it limits its scope, and is properly used in interpreting its words........": Brink v. Marsh, 53 Pa. Superior Ct. 293, 298, see too, Glen Alden v. Scranton, 282 Pa. 45, 51.

The text of the act, to be considered in the light of the rule quoted, is as follows: "That no disposition of property hereafter made for the maintenance or care of any cemetery, churchyard or other place for the burial of the dead, or of any portion thereof, or

Note 1. The orphans' court of Erie County (Boyd's Estate, 5 D. & C. 359) has likewise so construed the Act of 1891; (for an earlier decision to the same effect by the orphans' court of Lancaster Co. see Eby's Estate, 30 D. R. 338) ; while in Philadelphia (Wareham's Est., 26 D. R. 827) and in Montgomery (Hartgrave's Est. 28 D. R. 44) Counties, the orphans' courts have held that such trusts are not charitable bequests within Sec. 6 of the Wills Act.

grave therein, or monuments or other erections on or about the same, shall fail by reason of such disposition having been made in perpetuity, but said disposition shall be held to be made for a charitable use."[2]

Appellant contends that the act legalized such dispositions of property as in the absence of the statute, would be unlawful perpetuities; and that by the application of a familiar principle, the general words at the end—"but said disposition shall be held to be made for a charitable use"—must be subordinated to and be controlled by the specific enacting language preceding those words, and that, so considered, they merely describe immunity from the illegality indicated, as if the act had stated that such dispositions of property shall no longer be considered illegal as perpetuities, but shall be classified with charitable trusts for the single purpose of exempting them from what theretofore made them illegal. It is to be noted that the Act of April 26, 1855, P. L. 331, Sec. 10, (amended May 23, 1895, P. L. 114) had long before provided that "no disposition of property . . . . . . made for any religious, charitable, literary or scientific use shall fail for . . . . . . being given in perpetuity . . . . . ."

The requirement of the Wills Act that a will must be attested by two credible disinterested witnesses thirty days before a charitable trust created by it may become effective, was intended "to make it reasonably certain that the thing done was the free will act of the donor, and was not the result of undue solicitation on the part of interested persons": Kessler's Est., 221 Pa. 314, 321; the obvious mischief or defect of the law sought to be remedied by that statutory requirement, is not incident to the disposition of property for the maintenance of the burial lot of a testator or of his family, and, therefore, not a defect that the legisla-

Note 2. By an act approved earlier in the same session, cemetery companies were authorized to accept trusts for "keeping in good order and repair family burial lots, monuments, vaults, tombs, graves and lot improvements." Act of May 16, 1891, P. L. 88.

ture sought to cure by the Act of 1891, a consideration not without force in deciding whether the purpose was to subject such trusts to section 6 of the Wills Act.

It is established by a large body of English and American decision that, in the absence of statute authorizing them, such trusts for the maintenance and care of testators' burial lots (and generally of family burial lots) are void as perpetuities: Driscoll v. Hewlett, 198 N. Y. 298; Detwiler v. Hartman, 37 N. J. Eq. 352, 354; Corle's Case, 61 N. J. Eq. 409; Rickard v. Robson, 31 Beav. 244, (54 Eng. Reprint p. 1132); Hoare v. Osborn, L. R. 1 Eq. 585, 588; Bates v. Bates, 134 Mass. 113; Morse v. Natick, 176 Mass. 510, 513; Johnson v. Hollyfield, 79 Alabama 723; Coit v. Comstock, 51 Conn. 352, 386; Mason v. Bloomington Association, 237 Ill. 442, 446; Est. of Margaret T. Gay, 138 Cal. 552, 554; Jones v. Habershaw, 107 U. S. 174, 183; Kelly v. Nichols, 17 R. I. 306, 318; Piper v. Moulton, 72 Me. 155, 159; see also 11 C. J. p. 324, Sec. 34. These decisions are based on the fact that the maintenance of a family burial lot or of testator's grave is a matter of private personal concern and not of charity.

On the other hand, it is settled that a trust for the general maintenance of a cemetery, or of a cemetery in connection with a church, will be sustained as a charitable use, and some times as a religious use: 11 C. J. p. 324, Sec. 34, and section 10 of the Act of 1855, amended 1895, supra, expressly recognizes such trusts and exempts them from illegality as perpetuities.

When the familiar definition of a charitable use (see Thompson's Est., 282 Pa. 30, 34) is applied, there is no difficulty in distinguishing charitable trusts from disposition of property for the care of the family lot; there is no element of charity in the latter case; such expenditure "stands on the same footing as an expensive funeral" as was said in Mellick v. President and Guardian of the Asylum, 1 Jacob 180, 37 Eng. Re-

print, 818. In Rickard v. Robson, 31 Beav. 244, in considering a bequest for "keeping up" the tombs of "grandparents, parents and uncles," ROMILLY, M. R. said: "...... I am satisfied this does not come within the term 'charity,' and it is not within any of the words used in the preamble of the 43rd of Eliz. c 4. Lloyd v. Lloyd (2 Sim. (N. S.) 255), and the other case of Thompson v. Shakespeare (John 612; 1 S. G. F. & J. 394), show that a gift merely for the purpose of keeping up a tomb or building which is of no public benefit, and only an individual advantage, is not a charitable use but a perpetuity. The cases run into very fine distinctions, because if the gift is to keep up an institution for the benefit of the public, then it is clearly a charity. But that does not occur in this case, for here the gift is merely to keep up certain individuals' tombs. I must declare the bequests to the church wardens void." If such trusts had been charitable uses in Pennsylvania, and therefore not illegal as perpetuities, the Act of 1891 would have been unnecessary.

We are of opinion that the act was not intended to declare that a disposition of property, which, by the application of recognized rules referred to, could not be a trust for charity, should nevertheless for all purposes be a trust for charity. The reference to charitable use at the end of the statute is limited by the general enacting clause preceding and merely declares the character of the immunity from the effect of the perpetuity doctrine, which it was intended to confer on private trusts theretofore considered perpetuities, and this conclusion is in harmony with another familiar principle: "Legislative enactments are to be expounded as near to the use and reason of the prior law as may be, when this can be done without violation of its obvious meaning; for, say the cases, it is not to be presumed the legislature intended to make any innovations upon the common law, further than

the case absolutely requires'': Davidson v Bright, 267 Pa. 589. Such trusts are therefore not subject to the requirements imposed by section 6 of the Wills Act.

Moreover, this construction of the statute has been made on appeal. The first case on the subject which has come to our notice is Socks' Est., 15 Pa. Superior Ct. 281, in which the point raised in this appeal was passed over without mentioning the act of 1891. Testatrix died within the calendar month after making her will, with resulting failure of her charitable bequests (Act of April 26, 1855, P. L. 328, Sec.11). But there was also a trust for the preservation of a cemetery lot which seems to have been regarded as valid: see page 283.

In Palethorp's Estate, 249 Pa. 389, though it appeared that testator survived more than one calendar month after making his will, one of the trusts involved discussion of the act of 1891. Testator ordered that $150,000 be set aside ''for the care and maintenance of the Palethorp family lot which belongs to the estate of my late father and mother......and for the care and maintenance and renewal of any tombs and copings or rebuilding that may be required in the judgment of my trustees, and for flowers to be placed and maintained there, and for the support and maintenance of some proper person to be from time to time selected and employed by my trustees to attend to the care and oversight of said lot and show people where it is and perform such further duties in relation thereto as my said trustees may prescribe from time to time in the exercise of their best judgment.'' That trust, with others, was challenged on the ground that the execution of the will had not been attested by two disinterested witnesses within the meaning of the statute, and that it was ''in part an unlawful perpetuity and therefore wholly void.'' Although other trusts were declared invalid because witnesses were not disinter-

ested within the statute, the trust for the maintenance of the burial lot was sustained in part. The auditing judge said: (see page 399).

"Notwithstanding the fact that the Act of May 26, 1891, P. L. 119, declares that a gift for the maintenance of a cemetery lot 'shall be held to be made for a charitable use' the auditing judge interprets that act as contemplating only the validity of such a trust because of its being in perpetuity—otherwise any bequest for the care of a cemetery lot would be void if not executed in accordance with the provisions of the Act of 1855 and 1911.

"Is this gift then invalid as being a void perpetuity?......

"A trust for the care of a cemetery lot, for the maintenance of tombs thereon, and as well of flowers, is lawful. In part at least, therefore, the testator has created a legal trust. He however has added a provision that the income derived from his legacy shall also be used for the support and maintenance of a person to be selected by his trustee to care for said lot, 'to show people where it is,' and to perform such other duties as his trustee might designate. Is this purpose lawful?" The court held that such purpose was not contemplated by the Act of 1891, and "that the testator's gift of $150,000 for the care of his cemetery lot and the added purpose indicated by his will is void as creating a perpetuity except in so far as the reasonable care of his cemetery lot and the structures thereon is concerned......"

On appeal, this point was disposed of as follows: (page 410) "The first assignment of error relates to the bequest of $150,000 for the care of the cemetery lot in which the testator was buried. We do not find any reference to this question in the printed argument and must conclude that counsel for appellant do not care to press it. The reasoning of the learned audit-

ing judge as to this item is convincing and the equitable disposition made for setting aside a proper sum for this purpose should meet with the commendation of all concerned.''

If the trust of $150,000 for the objects stated had been a charitable use for all purposes by the act of 1891, there would have been error in taking away almost the whole principal (only $10,000 was set aside for the trust) and awarding it to the next of kin instead of awarding it for administration *cy pres*. The decision was that a trust for the care of testator's family burial lot was lawful under the act of 1891, but that it was not for all purposes within the class of charitable uses.

The statute again appeared in Close's Estate, 260 Pa. 269. Testator left two classes of trusts, one for the maintenance of family burial lots and the other for the general care and maintenance of cemeteries and the repair and re-construction of a mortuary chapel. The first was in the class of private trusts under the act of 1891, and the second among charitable trusts as understood before the act.

The statute was referred to in Neely's Est., 88 Pa. Superior Ct. 372. Decedent had provided that the residue of her estate, if any, ''is to go to the Sharon Presbyterial Church, the interest to be expended annually for the keeping of my lot in the cemetery and to be under the supervision of my executor.'' Collateral kin objected on various grounds, among them that the ''bequest is void because of the rule against perpetuity.'' It was also contended that the amount was much in excess of what was needed. This court held that in the circumstances shown concerning the condition of the church and adjoining cemetery, the trust should be sustained, and that, if the income exceeded what was required ''for the keeping of [the] lot in the cemetery'' it should be administered *cy pres* for the maintenance

of the church and cemetery; this was affirmed, 288 Pa. 130. In Brogan's Est., 290 Pa. 319, the residue was given "to the Greenwood Cemetery and the interest of it to go toward keeping up my burial lot in Greenwood Cemetery Company." The court below declared the bequest void; but on appeal the trust was sustained, following Neely's Est., supra. The Brogan trust for "keeping up my burial lot," and the Neely trust. for "keeping my lot in the cemetery" were both saved from being unlawful perpetuities by the Act of 1891: the fact that in Neely's Estate an administration *cy pres* was affirmed by this court in consequence of the peculiar circumstances in which testatrix made the bequest to the church, having regard to the condition of the cemetery and the church, is not to be considered as a decision by this court that the trust became a charitable use for all purposes by the Act of 1891, and therefore subject to section 6 of the Wills Act; that proposition was not involved.

As appellee's brief concedes that the gifts are not void as excessive, we need not refer to appellant's argument on that subject.

The decree is reversed and the record remanded for revision in conformity with this opinion, costs to be paid out of the fund.