Leber's Estate.

Argued March 11, 1936.

Before Keller, P. J., Cunningham, Baldrige, Parker, James and Rhodes, JJ.

2

*George Hay Kain, Jr.,* with him *George Hay Kain,* for appellant.

*E. Chapin McLean,* for appellee.

OPINION BY JAMES, J., July 10, 1936:

George Hay Leber died November 29, 1933, and by his last will and testament made the following bequest: "I leave $(2000.) as a trust fund, the interest of which is to help keep up the burial lot in Prospect Hill Cemetery." The account of his executors was referred to an auditor before whom the residuary legatees—two sisters of decedent—contended that the amount stated in this bequest was a clerical error and even though not a clerical error, the amount is excessive and more than necessary for the purpose for which it was given, and being a charitable bequest is subject to the jurisdiction and control of the orphans' court. The auditor, although finding that the sum of $600 was adequate to care for the two Leber lots, awarded the sum of $2,000 to the York Trust Company, as trustee, for the upkeep of the burial plot. Exceptions to the auditor's report were dismissed by the orphans' court, which in its opinion stated: "...... we are not prepared to say in this case that the sum of $2,000.00, devised by the testator, is unreasonable." Susan C. Leber, one of the residuary legatees, appeals.

Decedent left an estate in the aggregate of $74,700.29, made up of real estate valued at $25,000 and personal estate at $49,700.29; of the personal estate, the residuary legatees were awarded $30,157.83. An examination of decedent's holographic will shows the figures to be $(2000.), and no evidence was introduced to indicate a clerical error. In support of her position that the amount was excessive, exceptant called the superintendent of the Prospect Hill Cemetery, from whose testimony it appears that the Leber family plot consists of two lots surrounded by a coping upon which are erected

two upright monuments and that eventually the coping and the monuments will require repairs; in his opinion the sum of $600 was sufficient to take care of the lot "in the manner they would want it taken care of," but some of the lots in the cemetery had endowments of $1,000 in which event more care was rendered by the cemetery.

The sole question before us is whether $2,000 is an unreasonable sum for the upkeep of the burial plot. In *Palethorp's Est.*, 249 Pa. 389, 94 A. 1060, where testator made a testamentary devise of $150,000 in trust for the care and maintenance of the family burial lot and for the support and maintenance of a caretaker, the auditing judge awarded the sum of $10,000, the income derived from which could reasonably be used in the care of testator's cemetery lot and for repair and replacement of erections thereon, which on appeal was sustained. In *Neely's Est.*, 288 Pa. 130, 135 A. 540, testatrix bequeathed her residuary estate, amounting to $5,000, to the Sharon Presbyterian Church "the interest to be expended annually for the keeping of my lot in the cemetery." In sustaining this amount, although other factors for the maintenance of the lot were considered, the following language, from the opinion of Judge HENDERSON, (88 Pa. Superior Ct. 372) was adopted: "...... it was within her power to provide care for her burial place with greater liberality than might accord with the economical views of a stranger who considered the subject from the point of view of necessary respectability." The residuary estate, in *Brogan's Est.*, 290 Pa. 319, 138 A. 837, amounting to $3,760.-80, was devised and bequeathed "to the Greenwood Cemetery and the interest of it to go towards keeping up my burial lot in Greenwood Cemetery, Lancaster City, Pa." In its opinion, the Supreme Court said: "The words of the gift are entirely plain and to strike it down is to deny to testatrix the right to dispose of her

own property. It is a novel proposition that a person may not make testamentary provision for the care of his own burial place, regardless of what the cemetery association may have done. The gift to the cemetery is of the residue of the estate and is not avoided because the interest thereon may exceed what is sufficient to keep up her lot. Such provision must be liberally construed, for, 'Under the general jurisdiction of a court of chancery to administer the estate of a charity, it has power to vary the precise terms of a charitable trust, when necessary': *Kramph's Est.*, 228 Pa. 455, 463. The surplus, if any, in the instant case, may be devoted to whatever will add to the convenience and attractiveness of the lot. For example, improvement of the approaches and surroundings."

In fixing the amount of $600, the superintendent arrived at the figure by his opinion of the "manner in which they would want it taken care of," evidently having in mind the desires of the surviving members of the family. Their wishes cannot prevail over the specific bequest of the testator. Nor was the court bound by the amount of $1,000, which other lot owners had fixed as the amount necessary for maintenance. Decedent's liberality should not be thwarted unless the amount fixed was so disproportionate to the needs as to indicate clearly that the amount was excessive. Many factors are to be considered among which are the small returns now prevalent upon investments which the trustee would be authorized to make of the fund. Viewed as a whole, we find no reason for the reversal of the judgment of the orphans' court. If, in the passage of time, the management of this fund results in accumulations far in excess of what is necessary to carry out decedent's wishes, our determination of this appeal will not prevent further action by the court having jurisdiction of the fund.

Decree affirmed.