## Devereux's Estate

492

Before Van Dusen, P. J., and Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

*Paul Reilly* and *Thomas McConnell, 3rd,* for exceptants.

*Charles D. Smeltzer* and *Maurice A. Hogeland,* contra.

BOLGER, J., June 30, 1943.—This opinion applies to the companion trust in the estate of Annie E. Devereux, deceased, April term, 1905, no. 345, with the same force and effect as if filed therein.

At the audit of the accounts of the trustee, certain persons by their counsel appeared and claimed to be the next of kin of John L. Devereux, deceased. His will contained no residuary clause, but he was the residuary beneficiary of his sister, Annie E. Devereux, deceased, the latter having predeceased him. No objection was raised to the identity of these parties at that time, and, therefore, their status as next of kin was properly recognized by the auditing judge: Milliken's Appeal, 227 Pa. 502. Accordingly, it does not lie in the mouth of any party in interest to object at this time. By analogy see Henes v. McGovern, Admr., 317 Pa. 302.

The accounts reflect an expenditure of approximately $500 for the purposes of the trust, and the auditing judge has found as a fact that the unexpended income of $13,657.74 is excessive. He awarded all but $500 of the excess to the next of kin, the $500 being awarded back to the trustee as a reserve for contingencies. The finding of fact involved therein is amply supported by the record and is, therefore, sustained: Jacobs' Trust Estate, 320 Pa. 539, and the other cases cited in II Hunter's Pennsylvania Orphans' Court Commonplace Book 964. It appears from the record, although somewhat informally, that the cemetery lots in question and the cemetery itself are in good physical condition. The cemetery company has claimed the full amount of the excess income, and the trustee concurs, it having also filed exceptions to the adjudication.

A review of the authorities reveals that excess income may be applied, if not needed immediately for the care and preservation of the particular lot, for the upkeep of approaches to and beautification of the lot, or to the upkeep of the cemetery generally, since such upkeep tends to preserve the particular lot. However, all of

these cases deal prospectively with awards of principal funds, and in no instance is distribution of income directly concerned. In some of these cases extreme conditions were shown to exist. For instance, in Neely's Estate, 288 Pa. 130, the gift was to a church which was directed to use the interest for the "keeping of my lot" in the church cemetery. The fund was awarded upon a general showing that the cemetery was over one hundred years old and in a dilapidated condition which the church was not in a position to correct, since it had no funds for that purpose. Brogan's Estate, 290 Pa. 319, was decided on the authority of Neely's Estate, supra. In the absence of similar evidence, we believe it inequitable to award any portion of this fund to the cemetery company for such purposes. We also feel that the possibility of a catastrophe is so remote as to be inadequate to support an award.

The only evidence of record to support the requested award is a financial statement of the cemetery company reflecting a net operating deficit for the five years ending 1941—the figures for the last-named year, however, show a profit of $1,356.08. The accounts show payments of income of approximately $500 by the trustee to the cemetery company for the purposes of the trust. No claim is made, nor does it appear that any has been made heretofore, that further funds are needed at this time for the "care and preservation" of the lots or of the cemetery. The cemetery company's operating statement is not convincing. It does not show the financial condition of the company generally, nor does it show solvency or reserves.

The brief of counsel for the cemetery company reminds us that Laurel Hill Cemetery was incorporated by special act on February 9, 1837, P. L. 15, amended March 8, 1847, P. L. 266, on April 14, 1852, P. L. 710, and on March 20, 1869, P. L. 451. It is a corporation without capital, capital stock, or stockholders, has no provision for the distribution of profits, and is to exist

in perpetuity. Nowhere, however, does it appear whether or not it has accepted the provisions of the Constitution of 1874 or of the General Corporation Act of the same year. However, whether it be a corporation for profit or not for profit we consider immaterial. This decision applies in either event.

The subject of reserves of cemetery companies is peculiarly important. Under the Acts of March 18, 1909, P. L. 41, and the Nonprofit Corporation Law of May 5, 1933, P. L. 289, regulating the operation of nonprofit cemetery companies, the maintenance of such reserves is mandatory and is to be raised by applying from the sales of all lots 10 percent of the sales price, the income therefrom to be employed for the care of the cemetery generally. Obviously, until such reserve funds prove insufficient to fulfill their purpose, individual trusts of the instant character should not be called upon to accommodate that purpose. Such insufficiency was not established. Also, the deficits revealed in the statement might have been the result of inefficient management which has since been corrected, and, most important, they are not shown to have the remotest relation to the physical condition of the cemetery in general or of this lot in particular. Since the express purpose of the trust is the care and preservation of the lots, the burden was upon the cemetery company to prove its claim for any additional sum. Having failed so to do, we agreed with the auditing judge that no further distribution should be made to the cemetery company at this time.

The question of the power of the court to award this fund to the next of kin as directed in the adjudication is novel in its direct aspects. But there are many principles from which to start, and, in fact, in one case there is to be found indirect authority in point. The decisions are uniform in holding that the courts have no power to interfere with the right of a testator to create a trust for care of cemetery lots, so long as the amount is

commensurate with the purpose and does not offend public policy; and it cannot be said as a matter of law that a less sum would be sufficient for the purpose: Close's Estate, 260 Pa. 269; Wrenshall's Estate, 72 Pa. Superior Ct. 258; Palethorp's Estate, 249 Pa. 389; Leber's Estate, 123 Pa. Superior Ct. 1, and several other cases hereinafter cited. These estates all involved *prospective* awards of *principal* only. In Palethorp's Estate, supra, the fund of $150,000 bequeathed was reduced to $10,000 because it was for a capricious purpose. Therefore, we must conclude that the power exists to decrease the size of principal, and, since such reduction necessarily must result in the curtailment of income, it is clear that the decision supports the conclusion of the auditing judge. We believe that the merit of the award in the instant case is enhanced because it is made after more than 35 years of experience in the operation of the fund. There is no greater test than that of trial and error.

The other question, to wit, whether the next of kin are entitled, requires inquiry into the character of cemetery trusts, and the nature of the interests of the several parties in the establishment of the trust. In Close's Estate, supra, it was held that the Act of May 26, 1891, P. L. 119, which in terms declares that bequests for cemetery trusts "shall be held to be made for a charitable use," was intended to cover and treat as if for a charitable purpose any and all bequests for such purposes. Prior to that act, such bequests were invalid as perpetuities: Deaner's Estate, 98 Pa. Superior Ct. 360 (1930). This case also decided that the treatment of cemetery trusts as charities, as required by the Act of 1891, supra, extended only to the single purpose of exempting them from the operation of the rule against perpetuities. In Stephan's Estate, 129 Pa. Superior Ct. 396, the cy pres doctrine was decided to be inapplicable to cemetery trusts because the latter are private in

character. This characterization of these trusts as private is of the utmost importance in the decision of this case.

Many authorities classify these legacies under the designation "honorary trusts". Gray on Perpetuities (4th ed.) §898, and Bogert, Trusts and Trustees (1935) §161, among others, regard them as invalid trusts. They maintain that to create a trust there must be a trustee and a cestui que trust, just as in a marriage there must be a husband and a wife; that in this disposition there is no cestui que trust. Bogert maintains:

"The trustee cannot be under equitable duties to a nonentity. No provision has been made for the immediate or future identification of the cestui. A declaration of trust without any naming of a cestui leaves the declarant absolute owner. If the attempt to create the trust was by transfer, the effect of failure to mention a cestui may be either absolute ownership in the transferee or a resulting trust for the settlor or his successors. The former will be more normal when the transfer was for a consideration and the use of trust words is explainable on some basis other than that of real trust intent. The latter will usually follow on a voluntary transfer where the court has no doubt of the reality of the trust intent."

It appears, therefore, that while the burial lot in question, whether single or as part of a group in a cemetery, is the subject of the testator's donation, it cannot in any sense of the word be regarded as a beneficiary; neither can the cemetery company, for its position is no higher because it is only the trustee's agent for caring for and preserving the lot. It follows necessarily that grave doubt is attached to the cemetery's right to appear as a party in interest in the instant case, although we accepted its argument — more from its position as a potential substituted trustee than as possessing any beneficial interest.

As Mr. Gray states in Gifts for a Non-Charitable Purpose, 15 Harv. L. Rev. 509, 514: "The law will not allow a man in his lifetime to create a situation where the legal title is in A and the beneficial interest is in no one." See Discussions in 42 Dickinson L. Rev. 161, "Honorary Trust in Pennsylvania", and 30 Columbia L. Rev. 60. In A. L. I. Restatement of Trusts, §124, this type of disposition is regarded as creating no trust, but as giving the transferee a power to apply the property to the designated purpose so long as it does not offend the rule against perpetuities, or its purpose is not capricious. Comment (*a*) states that the trustee cannot be compelled to apply the property to the designated purpose since there is no beneficiary to enforce it. In comment (*c*), under the heading "Honorary trust" it is pointed out that the word "trust" connotes the existence of duties which will be enforced in the courts, and that it is more accurate to state that the trustee holds a power than it is to state that he holds upon trust, whether honorary or otherwise.

However, in its Pennsylvania Annotations, this authority finds that "The Pennsylvania cases seem rather contrary to this section." This conclusion is correct. In Schwehm's Estate, 264 Pa. 355, the court, suo moto, declared void an agreement to settle a will contest which would have set aside a valid sole and separate use trust. So, in Stoffel's Estate, 295 Pa. 248, where a will contest settlement would have materially cut down an amount to be expended for a monument, the agreement was nullified by the court. Snyder Estate, 274 Pa. 574, is direct authority for the practice consistently pursued by this court in cases where executors and trustees do not take adequate steps to uphold wills and trusts contained in them, i. e., by appointing, of its own motion, a trustee ad litem for all the trusts purported to have been created by the probated writing and to order a rehearing. In Laverelle's Estate, 101 Pa. Superior Ct. 448, a very broad interpretation was given to section 9

of the Orphans' Court Act of June 7, 1917, P. L. 363, providing that the jurisdiction of the orphans' court shall extend to the appointment of trustees and "the control, removal, discharge and settlement of the accounts of trustees so appointed and of testamentary trustees". This language was held to have a comprehensive significance including the right to direct, command, and dominate; and that section 10 gives our courts discretion in making rules regulating the practice thereof. In Wilson v. Board of Directors of City Trusts et al., 324 Pa. 545, this legislation was held to give our courts plenary power, and that in the exercise of such jurisdiction we may appoint examiners to make periodical or special examination of the assets of estates in the hands of trustees. It is perfectly clear, therefore, that in Pennsylvania this type of bequest is regarded as a trust, possessing all the essential incidents thereof; that the trustee becomes vested with a legal estate—not merely a power—with the duty of applying it to the purpose of the trust; that the lack of a cestui que trust, which normally results in there being no one having standing to compel the trustee to perform, is here supplied by the power and implementation of orphans' courts to supervise and control the activities of the trustee, suo moto, or upon the application of or on the failure of the testator's next of kin.

The awards to the next of kin were legally and equitably correct. The voluntary gifts by these testators to the trustee were not absolute, because, while on their face they purport to vest the entire legal interest in the trustee, all interest did not actually pass from the testators. It is clear from the language of the gifts that the purposes of these trusts might at some time during their perpetual operation fail, either in whole or in part, legally or equitably—that the event which has happened might happen—and result in there being a balance of either principal or income in the hands of the trustees which could not or should not be applied

wholly or in part to the uses and purposes of the trust; as though these testators had failed specifically to provide for the devolution of part of their estates. What the trustee received, therefore, were limitations. The remaining interests—the right to any excess left over and above what would be necessary to fulfill the trust in the testators' estates—were the possibilities of reverter. These property rights retained by the dead hands of the testators are equitable in character and operate by force of law requiring no formal act to establish them. Such interests, never having left the estates of the testators, were always vested in interest—possession only being postponed until the surpluses were judicially declared to exist. They are now exercised and the fund involved reverts through the respective estates as awarded by the auditing judge.

Another theory or doctrine producing the same result is the classification of the excess income as resulting trusts. Presenting the authorities in the inverse order to that in which they are hereinbefore stated, we cite the A. L. I. Restatement of Trusts, at page 1322:

"Topic 3. Where an Express Trust Does Not Exhaust the Trust Estate

"§430. General Rule.

"Where the owner of property gratuitously transfers it upon a trust which is properly declared but which is fully performed without exhausing the trust estate, the trustee holds the surplus upon a resulting trust for the transferor or his estate, unless the transferor properly manifested an intention that no resulting trust of the surplus should arise."

Comment (g) thereto provides:

"Where terms of the trust do not show that there will be a surplus. The rule stated in this Section is applicable where the owner of property transfers it to another person and declares a trust for a particular purpose and it does not appear from the terms of the

trust whether or not the whole of the trust property will be needed for the accomplishment of the purpose but it ultimately turns out that it is not all so needed and the trust is fully performed without exhausting the entire property."

This principle has its application in this State. In Howell's Estate, 180 Pa. 515, and Kenworthy's Estate, 230 Pa. 606, unbequeathed excess income was awarded in the earlier case to residuary legatees and in the later case to the next of kin. In Lilley's Estate, 272 Pa. 143, which is one of the multitude of cases dealing with the application of the rule against perpetuities, property constituting a gift which failed because its provisions violated the rule was, as is customary, awarded to the heirs at law and next of kin of the testator upon a resulting trust. Likewise the court in Palethorp's Estate, supra, awarded the excess principal to the residuary legatee.

In Slegel v. Lauer et al., 148 Pa. 236, a conveyance of real estate was made to grantees for a specified purpose "and no other"—which later failed. While the grant was in fee simple, the duration depended upon the concurrence of collateral circumstances, which qualified and debased the purity of the grant: 2 Blackstone Commentaries 109. The fee was, therefore, a base fee and upon its determination the property reverted to the grantor without any claim or act on his part. There remained in him at all times the possibility of reverter which was transmissible to his grantees. Similar conclusions are also reached in certain cases having to do with the abandonment of land or of easements originally obtained for public purposes by the exercise of the right of eminent domain: Leach v. Philadelphia, Harrisburg & Pittsburgh R. R. Co., 258 Pa. 518; Jessup v. Loucks, 55 Pa. 350; see also Gray on Perpetuities (4th ed.) §14; Bogert on Trusts and Trustees §§468, 469. The principle is recognized in leases of coal in place, reserving the rights to the surface of the land

and to surface support: Smith v. Glen Alden Coal Company et al., 347 Pa. 290, which quotes, inter alia (p. 303), 1 Minor on Real Property (2nd ed.) sec. 769, p. 1005: "A reversion is the remnant of an estate *continuing in the grantor*, undisposed of, after the grant of a part of his interest." While the subject matter of these latter cases is in every instance real estate, we are satisfied the doctrine has equal application to personalty. See 143 A. L. R. 389, and A. L. I. Restatement of Property §154.

In weighing the equities involved, we dispose of the contention that the auditing judge's conclusion is in contravention of the wills. Preliminarily it is essential to identify and describe the fund involved in this controversy. It is that portion of income which is not needed for the care and preservation of the lot or of the cemetery property itself. It follows that any award must carry with it the right of the recipient to use the fund for any purpose, personal or otherwise, without supervision by the court or recourse of any party. There are three possible avenues of distribution: (1) To the trustee; (2) to the cemetery company; and (3) to the next of kin. The first may be eliminated from consideration, for no claim is made on behalf of the trustee. If to the cemetery company, it constitutes gifts by the testators to a stranger. We are certain that it was not the testators' capricious intention to enrich the cemetery company. Any additional award to it now would accomplish such an unfortunate result, which is not contemplated by the authorities, either legislative or judicial.

Another objection to the awards is that they offend the rule of res judicata and that the statute of limitations has run against the claims of the next of kin. Crozer's Estate, 337 Pa. 327, and Osterling's Estate, 337 Pa. 225, are cited. Where a right is declared to exist, equity will not deny a remedy to perfect that right. Res judicata is the establishment or denial of a right,

not of a remedy. Therefore, none of the previous adjudications having denied the existence of the right herein declared, we are merely affording a remedy for its enforcement: Emmerich Estate, 347 Pa. 307. The previous adjudications in these estates dealt only with principal funds, and·in none of them was this specific fund of income awarded: Harned's Estate, 273 Pa. 237; Kellerman's Estate, 242 Pa. 3. Nor was the existence of the possibility of reverter, which reposed at all times in these next of kin, opposed by the parties or divested by the court—it has accompanied the funds at all times since their creation. This reservation is not unusual. It is employed specifically in Leber's Estate, supra, where, in the last sentence of the opinion, the right to claim surplus income is reserved; and in Close's Estate, supra, the award was made without prejudice to the residuary legatee making further application if it could at any time show that all of the income was not required for the upkeep of the cemetery and burial lots.

Having decided that the right of the next of kin to this fund did not arise until it was judicially declared to exist, we must, therefore, dismiss the complaint that the statute of limitations has run against them. As Bogert says in his treatise on Trusts and Trustees, §468, the statute does not begin to run so long as the trustee executes the trust. See also Roney's Estate, 227 Pa. 127.

The rule against perpetuities is not offended because that rule concerns the commencement of interests and not their duration: Gray on Perpetuities (4th ed.) §232; Johnston's Estate, 185 Pa. 179.

Likewise, the accumulations here are not illegal since they are not capitalized but are the concomitants of an otherwise valid trust and merely incidental to it. In Mathues' Estate, 322 Pa. 358, it was said that the term "illegal accumulation" applies only to income retained for the deliberate purpose of adding it to corpus. In Sinnott's Estate, 310·Pa. 463, the retention of the sum

of $16,800 in income by the trustee was approved so long as it was not for the purpose of swelling large accumulated balances, but as a reserve for the general purposes of the trust.

In answer to the suggestion of the trustee that award of this fund to the next of kin legalizes the trusts as devices to avoid illegal accumulations, we believe such argument would come with better grace from the next of kin, but we desire to give warning that the size of the principal of these trusts is dangerously close to being incommensurate with their purposes, as defined in Wrenshall's Estate, supra, and the other authorities. It is possible, therefore, that application might properly be made in the future by the next of kin or by the court, of its own motion, to reduce even the principal fund to the point where it will be commensurate with the purposes of the trust. Similarly, this decision will in no way prejudice the right of the cemetery company to claim proper sums out of future income. In any event the vigilance of the courts can be relied upon to detect and to denounce or adjust improper limitations.

While the auditing judge concluded that the Laurel Hill Cemetery Company is a corporation for profit, nevertheless, the record does not contain any information relative thereto. However, as Judge Ladner held in Estate of John F. Raney, Deceased, no. 3498 of 1942, if a cemetery company be a business corporation, there is no longer any authority for it even to receive such funds direct from a donor, a settlor, or testator. The Act of May 16, 1891, P. L. 88, 15 PS §1094, has been expressly repealed as to such corporations by the Business Corporation Law of May 5, 1933, P. L. 364, sec. 1202, 15 PS §2852-1202. If the company be a nonprofit corporation, the Acts of May 14, 1874, P. L. 165, and of May 16, 1891, P. L. 88, have been expressly repealed by the Nonprofit Corporation Law of May 5, 1933, P. L. 289, sec. 1102. Section 1102 of the last-named act now supplies the authority for such corpora-

tions to serve as trustee, while it provides in greater detail concerning the use and administration of such funds and makes the quarter sessions court of the county where the charter was granted the supervisory court to enforce the proper administration of the funds; nevertheless, it does not grant cemetery companies power to act as corporate trustees or enlarge their powers beyond that granted under former laws. The adjudication properly relies upon Cozens' Estate, 36 D. & C. 388 (1939), following Lewis' Estate, 30 Dist R. 391, to the effect that there is no statutory authority for the court appointment of cemetery companies as substituted trustees.

We are also constrained to observe that the acceptance of the resignation of the present trustee and the substitution therefor of the cemetery company would be inimical to the best interests of the trust, and, we believe, contrary to testators' intent. The request would, if approved, remove the strongest impediment to the ability of the cemetery company completely to appropriate the trust to its own purposes. We likewise are of the opinion that the testators in setting up these trusts relied upon the supervisory jurisdiction of the trustee, which circumstance we are obligated to fulfill. The trustee's desire to resign is not consistent with its acceptance of the benefits it has received as coexecutor and cotrustee of other trusts under the will of John L. Devereux, deceased, and as trustee of other trusts under the will of Annie E. Devereux, deceased. If the instant trusts have become onerous and unprofitable to the trustee, it "must take the bad with the good". Ordinarily, this court does not look with favor upon a trustee's petition to resign in this or any other type of trust, because of the possibility of double or greater commissions being required for the administration of the estate, which is necessarily involved in the appointment of substituted trustees.

Since the cemetery company's exceptions are not sustained, and no other party in interest has objected to the fees allowed the trustee ad litem, their allowance is approved.

The exceptions are dismissed and the adjudication is confirmed absolutely.