## Essig Estate.

Argued March 24, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH and ARNOLD, JJ. (ROSS, J., absent).

*J. Hay Brown, Jr.,* for appellant.

*Harris C. Arnold,* with him *Arnold, Bricker & Beyer,* for appellees.

OPINION BY RENO, J., July 20, 1950:

St. Mary's Cemetery Association appealed from the final decree entered in the audit of the account of the successor trustees under the will of Sebastian Essig.

The decedent died on April 26, 1878, and his will provided: ". . . I give to the Trustees of Saint Mary's Catholic Church their successors and assigns the sum of five hundred (500) dollars, *the annual interest of which shall be applied to keeping in good repair the grave of my daughter Lizzie A. S. Hook and the graves of my said wife and of myself, and for keeping in good repair the fence enclosing* our burial lot in the Cemetery of said Saint Mary's Catholic Church, . . ." (Emphasis supplied.) The original trustees declined to act and the present accountants are successors to intermediate trustees appointed by the court.

The account disclosed a balance of $534.94 principal and $59.96 income. It covered the period from 1934 to 1948, and revealed over the years an annual gross income of $13.75 and payments to the cemetery association for upkeep of the burial plot of $4.00 a year, except during 1940 when $6.00 was paid and 1947 when $10.00

was paid.[1] In 1937 the markers were cleaned at an expense of $25.00. From accumulations of income a monument was erected in 1934 at a cost of $550 and in 1939 a foundation for a tombstone cost $234.99.

The cemetery association excepted to the account, and claimed the unexpended income. It proposed to use the award for its general purposes in the operation and maintenance of parts of the cemetery other than the Essig burial lot. President Judge APPEL, the auditing judge, allowed the claim to the extent of $50, leaving $9.96 to the accountants and directed them "to continue payment from the annual income [to the cemetery] such sums approximately relative to those heretofore made as indicated in the present accounting, until such time as the Court may make additional orders." The auditing judge's successor, President Judge BOWMAN, holding that there was "no unreasonable accumulation of income and, therefore, no surplus income", sustained the accountants' exceptions, and in the final decree set aside the award to the cemetery.

The ground upon which Judge BOWMAN pitched his decision is unassailably sound. Without violating any statutory or testamentary direction against accumulations, trustees may, within reasonable limits, retain temporarily a certain amount of surplus income in aid of the judicious management of the trust and to provide for future contingencies. *Sinnott's Est.*, 310 Pa. 463, 165 A. 244; *Howell's Est.*, 180 Pa. 515, 37 A. 181. Cf. Estates Act of April 24, 1947, P. L. 100, §6(1), 20 P. S. §301.6. Conceivably a decline in earnings may occur, the cost of maintenance may be increased, unanticipated

---

[1] The cemetery charges $6.00 annually for the services it renders to the lot. This leaves $7.75 for trustees' compensation and costs of filing periodic accounts, for additional care, and for repairs to and cleaning of stones.

expenditures may be required in the future, and it cannot be said that retention of $59.96 is excessive or unreasonable. Even if the future income is not decreased several years must necessarily elapse before a sufficient sum can be accumulated for another cleaning of the monuments. Counsel fees and the printing costs in this appeal impose a present obligation.

This appeal and *Slifer v. Greenmount Cemetery Co.*, 164 Pa. Superior Ct. 534, 67 A. 2d 584, testify to the difficulties encountered by cemeteries in these days of increasing costs of operation and maintenance. Appellant's receipts during 1947 were $2881.78 and its expenditures $4587.77. Naturally the cemetery authorities have not been able to maintain the grounds at the highest level of good order and repair, and their search for further income available for general purposes is understandable. But the devise here was for a specific, not a general, purpose: for the "repair [of] the grave of my daughter . . . and the graves of my said wife and of myself, and for keeping in good repair the fence . . ." Something can be said on behalf of the proposition that individual lot-owners are interested in the appearance of the cemetery as a whole, and that its adequate maintenance is within the spirit and intent of testators.[2] For that proposition appellant frankly invokes the application of the cy pres doctrine.

Cy pres operates only on charitable trusts (Restatement, Trusts, §399),[3] and a trust for the care of a burial

[2] However, if the small annual surplus income were taken from the trustees and expended for work in other parts of the cemetery it is conceivable that the Essig lot could not be maintained at its present standard.

[3] Restatement, supra, Comment *a* distinguishes the cy pres doctrine from "an analogous but not as extensive a principle, which is applicable to private trusts." The rule for the principle applicable to private trusts is stated in §167.

plot is not a charitable trust. It is a private trust, so declared in *Deaner's Est.*, 98 Pa. Superior Ct. 360, 364 (allocatur refused, Id. xxv) where Judge, now Mr. Justice LINN, speaking for this Court, exhaustively examined the subject, reviewed numerous authorities, and concluded: "When the familiar definition of a charitable use . . . is applied, there is no difficulty in distinguishing charitable trusts from disposition of property for the care of the family [cemetery] lot; there is no element of charity in the latter case; . . ." See also *Stephan's Est.*, 129 Pa. Superior Ct. 396, 195 A. 653.

Appellant relies upon *Neely's Est.*, 88 Pa. Superior Ct. 372, affirmed 288 Pa. 130, 135 A. 540, and *Brogan's Est.*, 290 Pa. 319, 138 A. 837. They contain intimations that excess income of a burial-plot trust is administrable under the cy pres doctrine. Judge LINN referred to these cases and analyzed *Neely's Est.*, in *Deaner's Est.*, supra, p. 369. He explained that "in Neely's Estate an administration *cy pres* was affirmed by this Court in consequence of the peculiar circumstances in which testatrix made the bequest to the church, having regard to the condition of the cemetery and the church . . ." The *Neely* case, therefore, must be limited to its own peculiar facts. *Brogan's Est.*, supra, p. 332, even if it did not expressly repudiate Judge HENDERSON'S suggestion in the *Neely* case, cannot be read as an extension of cy pres beyond the confines of the factual situation there present. If these intimations are at all applicable they can mean only that possibly trustees in the exercise of reasonable discretion and with judicial approval might have authority to contribute surplus income for the general purposes of the cemetery. Certainly the cemetery authorities cannot adversely lay hold of the trust fund for any purpose they deem proper.

This appeal might well have been quashed under the authority in *Devereux Est.*, 353 Pa. 560, 46 A. 2d 168.

Appellant has been paid its annual fee for maintaining the plot, and hence it is not a creditor. Nor can it be said to be a beneficiary under the decedent's will. In the court below it was allowed to proceed as a claimant, and, since both parties desire a decision on the merits, we concluded to overlook appellant's lack of standing in this Court.

Decree affirmed; the parties will pay their own costs.