HAMMOND *v.* STRINGER, TRUSTEE.

5-62                                            258 S. W. 2d 46

Opinion delivered May 25, 1953.

*C. L. Farish* and *John M. Lofton, Jr.,* for appellant.
*John G. Moore* and *J. M. Smallwood,* for appellee.

GRIFFIN SMITH, Chief Justice. Appellants as heirs of Mrs. Janie Dilbeck sought a decree vesting in them unascertained interests in the estate of the testatrix. They alleged that the express trust created by the will had failed in part in that the fund specifically set aside for the designated purpose was in excess of anything the testatrix could have contemplated, therefore as to such surplus Mrs. Dilbeck's heirs at law should share according to the degree of relationship.

The will, after making nominal bequests, directed the executors (one of whom had died at the time of suit) to convert real property into money, pay debts, ". . . and that they purchase and erect a tombstone at my grave of a like character and description as that at the grave of my deceased husband, J. W. Dilbeck; that they procure and have placed around my grave a marble coping like that around the grave of my said deceased husband, and that they have a concrete coping placed around the entire lot on which the graves . . . are located. I further direct my executors to pay for the materials and work mentioned out of the proceeds of the sale of my real property, and that they use the balance of said proceeds, if any, in the care and upkeep of the cemetery lot containing [these] graves, exercising their own best judgment in the handling of said money and the expenditure thereof and continuing to do so until the entire balance of said money is expended."

Allegations of the complaint were that interest or dividend earnings on an investment of $500 would be sufficient to provide the installations required by the will and cover cost of perpetual upkeep in Morrilton Cemetery Association's burial ground, where the bodies rest. It will be seen, therefore, that those specifically mentioned in the will, whose rights to share in the estate were expressly limited, now propose to have the amounts increased on the theory that the testatrix must have been mistaken regarding appropriate costs, or as to the amount to be realized from sale of the property.

The Cemetery Association derives its revenues from contributions, approximating $2,000 annually. It has been

in debt "maybe three years out of six." The intention is to keep driveways mowed. The Dilbeck lot had been given the same attention as others. The Association does not replace grave markers, or repair concrete installations.

W. H. Springer, the surviving trustee, testified that the fund in his hand might be a little more or a little less than $2,700. He had paid the Association to keep the site mowed, but quit when suit was filed.

The secretary of a saving and loan association testified that his company had been paying dividends equal to four percent. Assuming this status would continue, a reasonable return on an investment of $500 would be $20 per year. An officer of the cemetery association testified that the Dilbeck executor had been paying $15 yearly for upkeep of the graves.

At the conclusion of evidence offered by the plaintiffs the defendant's motion to dismiss was sustained. Effect of the holding was to say that the evidence was not legally sufficient to support contentions of the plaintiffs that the fund should be diverted. We agree with that view. Act 470 of 1949, and the construction given it in *Werbe* v. *Holt,* 217 Ark. 198, 229 S. W. 2d 225, are not impaired by this holding.

It is conceded by appellees that equity has power to grant relief in a case like this if the evidence discloses miscalculations by the maker of a will and a fair inference is that but for such error no restriction would have been expressed. A leading case cited by appellants is annotated in 55 A. L. R., p. 1303, *In re Turk's Will,* 221 N. Y. Supp. 225, 128 Misc. R. 803, appeal dismissed, 222 Appellate Division 724, 226 N. Y. S. 111. Cases from other courts, such as *Ford* v. *Ford's Executors,* 91 Ky. 572, 16 S. W. 451, are mentioned.

The better rule is that courts will not interfere with the right of a testator to create a trust for use in the care of cemetery lots " . . . so long as the amount is commensurate with the purpose and does not offend public policy, and [when] it cannot be said as a matter of law

that a less sum would be sufficient for that purpose.'' *In re Devereaux Estate,* 48 Pa. D. & C. 491. See, also, *In re Wrenshall's Estate* (1919), 72 Pa. Sup. Ct. Rep. 258.

The generally accepted view is that one may do what pleases him in disposing of property by will unless positive prohibitions of law interfere or unless the disposition made is contrary to public policy. The first proposition is emphasized in *Clemenson* v. *Rebsamen,* 205 Ark. 123, 168 S. W. 2d 195.

Here the chancellor was dealing with a lawful will in which the testator's wishes were clearly set out. The opinion of the secretary or treasurer of a building and loan association that $500 placed with his company would probably produce $20 annually, and the belief of others that no greater sum was essential, were clearly contrary to Mrs. Dilbeck's directions that her executors *should continue* [*upkeep*] ''until the entire balance of said money is expended.'' In vol. 2, at p. 1021, § 337, of the Restatement, it is said: ''If the continuance of the trust is necessary to carry out a material purpose of the trust, the beneficiaries cannot compel its termination.'' In the case at bar the appellants are not beneficiaries other than to the limited extent of $1. How can it be said that Mrs. Dilbeck did not intend that this should in any circumstance be the maximum receivable? Executor Springer testified to an awareness that he had not taken care of the lot ''like Mrs. Dilbeck wished, or like I would have taken care of it,'' but for the litigation.

Pertinent comments are to be found in *Hills* v. *Travelers Bank & Trust Co.,* 125 Conn. 640, 7 A. 2d 652, 123 A. L. R. 1419-25: ''The function of the court with reference to trusts is not to remake the trust instrument, reduce or increase the size of the gifts made therein, or accord the beneficiary more advantage than the donor directed that he should enjoy, but rather to ascertain what the donor directed that the donee should receive and to secure to him the enjoyment of that interest only.''

Assuming that a current investment of $500 would yield $20 per year, still there can be no permanent assur-

ance that this income will continue indefinitely, or that it is sufficient. Mrs. Dilbeck had a perfect right to direct that the residue of her estate be kept in trust for the care of her grave and that of her husband, and that all of the money be spent for these purposes.

Affirmed.